```
                          UNITED STATES DISTRICT COURT

                                DISTRICT OF NEVADA

                                     * * * * *

UNITED STATES OF AMERICA,        )
                                 )
               Plaintiff,        )    03:02-CV-0615-LRH (VPC)
                                 )
vs.                              )    -- consolidated with --
                                 )
ERGS, INC.; JOHN MCCAMANT; CFA,  )    03:04-CV-0237-HDM (RAM)
INC.; and SIERRA SAGE APARTMENTS,)
LLC,                             )            ORDER
                                 )
               Defendants.       )
                                 )
_____)
                                 )
SILVER STATE FAIR HOUSING        )
COUNCIL, INC.,                   )
                                 )
               Plaintiff,        )
                                 )
vs.                              )
                                 )
ERGS, INC.; SIERRA SAGE          )
APARTMENTS, LLC; and JOHN        )
MCCAMANT,                        )
                                 )
               Defendants.       )
                                 )
_____)
                                 )
ERGS, INC. And SIERRA SAGE       )
APARTMENTS, LLC,                 )
                                 )
           Third-Party Plaintiffs,)
                                 )
vs.                              )
                                 )
PYRAMID ENGINEERS AND LAND       )
SURVEYORS, INC.; and THOMAS J.   )
GRIBBIN, individually; and DOES I through )
X, inclusive,                    )
                                 )
           Third-Party Defendants,)
_____)
```

1    Presently before this court are cross-motions for summary or partial summary judgment
2    (##192 & 194[1]) between Third-Party Defendant Thomas Gribbin ("Gribbin") and third-Party
3    Plaintiffs ERGS, Inc. and Sierra Sage Apartments, LLC ("Plaintiffs").  Plaintiff's have opposed
4    Gribbin's motion for summary judgment (#193) and Gribbin has opposed Plaintiff's motion
5    (#206).  Both parties have filed replies (## 202 & 222).

## FACTUAL AND PROCEDURAL BACKGROUND

7    This case arises out of a Fair Housing Act ("FHA") violation brought against Plaintiffs.
8    During the course of that lawsuit, Plaintiffs filed a third party complaint against Gribbin and
9    Pyramid Engineers and Land Surveyors, LLC ("Pyramid").  The third party complaint alleged
10   that Pyramid had been responsible for engineering and designing walkways and parking
11   configurations that resulted in violations of the FHA.  It sought recovery on theories of
12   indemnification and contribution.  The complaint also sought to recover from Gribbin by
13   piercing Pyramid's corporate veil through a showing that Pyramid operated as an alter-ego of
14   Gribbin.
15   The underlying FHA litigation resulted in a settlement between the United States, Silver
16   State Fair Housing Council, ERGS, Sierra Sage Apartments and John McCamant.  However, that
17   settlement did not include Pyramid or Gribbin and therefore did not eliminate the third party
18   complaint.  Thus, despite the settlement, a lawsuit still exists that pits ERGS and Sierra Sage
19   Apartments against Pyramid and Gribbin.
20   As part of that remaining litigation, Gribbin filed the present motion for summary
21   judgment to determine whether Plaintiffs could pierce Pyramid's corporate veil to reach
22   Gribbin's personal assets.  Plaintiffs have opposed Gribbin's motion and filed their own motion
23   for summary judgment, contending that piercing the corporate veil is appropriate in this instance.
24   Pyramid began work on the Sierra Sage Apartments around 1997 and was involved until
25   about May 1998 when CFA, Inc. took over the work Pyramid had been doing.  The current
26   lawsuit was filed in 2002 and Pyramid and Gribbin were advised of the suit in late 2003.

---

[1]  References to (#XX) refer to the court's docket.

1  However, the third party complaint at issue here was not filed until February 2005.

2      Around the time it ceased working on the Sierra Sage Apartments, in 1998, Pyramid sold
3  most of its assets to FPE Engineering, but retained its cash on hand and its accounts receivable.
4  This sale resulted in Gribbin becoming the sole shareholder of Pyramid stock. Gribbin then
5  made his wife an employee and officer of Pyramid.

6      From 1998 to 2002, Pyramid collected on its accounts receivable. The company
7  maintained health and life insurance on Gribbin and his wife and paid Gribbin's cell phone and
8  car payments. The remaining income was used to pay debts to the former shareholders or was
9  paid directly to Gribbin or former Director Ralph Nofield. In February 2002, Gribbin wrote a
10 check to himself for all the funds remaining in Pyramid's accounts and attempted to dissolve the
11 corporation. The proper formalities were not followed, however, leaving Pyramid as a valid, but
12 suspended, corporation in California.

13 **LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

14     A court must grant summary judgment if the pleadings and supporting documents, when
15 viewed in the light most favorable to the non-moving party, "show that there is no genuine issue
16 as to any material fact and that the moving party is entitled to judgment as a matter of law."
17 Fed.R.Civ.P. 56(c). An issue as to any material fact is only "genuine" if the evidence regarding
18 the disputed fact is "such that a reasonable jury could return a verdict for the nonmoving party."
19 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of
20 evidence in support of the plaintiff's position will be insufficient [to preclude summary
21 judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

22 **DISCUSSION**

23     The sole question before the court at this time is whether the court should pierce
24 Pyramid's corporate veil and hold Gribbin personally liable for any corporate liability which may
25 have arisen from the construction of the Sierra Sage Apartments. Both parties have based their
26 arguments on the presumption that California law governs the piercing issue based on the fact
27 that Pyramid is a California corporation. The court has reviewed the applicable rules governing
28 the choice of law in such situations and agrees that California law controls. *See,* Restatement

(Second) of Conflict of Law § 307 (1971) ( providing that the local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to a corporation's creditors for corporate debts).

Piercing the corporate veil, otherwise known as the alter-ego theory of liability, is an equitable doctrine which is invoked when a plaintiff claims that an individual is unjustly using the corporate form in derogation of the plaintiff's interests.  There is no litmus test to determine when piercing is appropriate, rather the analysis will turn upon the circumstances of each particular case.  However, two general requirements exist for the corporate veil to be pierced.  First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.  And second, that failing to pierce the corporate veil will lead to an inequitable result.  *See Mid-Century Ins. Co. v. Gardner*, 11 Cal.Rptr.2d 918, 922 (Cal. Ct. App. 1992) (summarizing California law regarding the alter-ego theory of liability). It is the plaintiff's burden to overcome the general presumption that the corporate entity is separate from its shareholders.  *Id.*

Within the larger analysis, California courts have considered several factors to determine whether it is appropriate to pierce the corporate veil.  These factors include such considerations as whether there has been a commingling of corporate funds and other assets; whether corporate funds have been diverted for non-corporate purposes without proper authorization; whether an individual treats the corporate assets as his own; whether an individual represents that he is personally liable for corporate debt; whether adequate corporate records have been kept; whether one individual dominates in the ownership or control of the corporation; and whether an individual has disregarded formalities and failed to conduct arm-length transactions with the corporation, among others.  *See Assoc. Vendors, Inc. v. Oakland Meat Co.*, 26 Cal.Rptr. 806, 813-15 (Cal. Ct. App. 1963).  However, courts are to be wary in deciding to pierce the corporate veil.  It is not sufficient to merely show that a creditor will not be paid to demonstrate an inequitable result.  The purpose of the doctrine is not to ensure payment but, rather, to afford protection to creditors when some conduct amounting to bad faith makes it inequitable for an individual to hide behind the corporate veil.  *Id.* at 816.  Thus, the ultimate issue to resolve is

1  "whether in the particular case presented and for the purposes of such case justice and equity can
2  best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the
3  corporate form." *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606-07 (Cal. 1985) (quoting *Kohn*
4  *v. Kohn*, 214 P.2d 71, 77 (Cal. Ct. App. 1950)).

5        Reviewing the fact provided to the court, it is apparent that the first element of this
6  analysis is met.  Given the substantial intermingling of personal and corporate business,
7  Gribbin's actions as sole shareholder of Pyramid, and the personal benefits gained by Gribbin
8  and his wife after the asset sale to FPE Engineering, there appears such a unity of interest and
9  actions that it cannot be said that Gribbin and Pyramid were separate entities.  The funds owed
10 and paid to Pyramid found their way directly to Gribbin through benefits, insurance and direct
11 payments.  This was not an isolated instance, but rather the course of business for Pyramid once
12 Gribbin became the sole shareholder.  Nor is it unexpected.  The business aspect of Pyramid had
13 been sold and Gribbin was simply using the company to aid in his retirement.

14       The second factor, however, is lacking.  To succeed, Plaintiffs must show that an
15 inequitable result would follow from recognizing the corporate entity.  Plaintiffs contend this
16 inequitable result follows from the fact that Pyramid lacks the assets necessary to pay any
17 judgment because of Gribbin's actions.  While the court recognizes this result, the court does not
18 find this result rises to the level necessary to pierce the corporate veil.

19       The facts demonstrate that Pyramid sold its assets in 1998 and that Gribbin began
20 winding down the company shortly thereafter.  Gribbin maintained certain aspects of the
21 company in order to ensure he retained certain benefits he needed.  The company was slowly
22 dissolved of its assets over several years until Gribbin no longer needed or wanted the services
23 the corporation could provide.  At that time Pyramid was completely liquidated and dissolution
24 was attempted.  All of this occurred prior to Pyramid being named in a third party complaint and
25 the majority occurred before the primary lawsuit had even been filed.

26       This court's review of California law shows that an inequitable result follows not from a
27 failure to resolve a debt or liability but from a failure to resolve that debt or liability brought on
28 by the improper, and quite possibly bad faith, efforts of a sole shareholder.  If such a situation

exists, the corporate wall is pierced for the purpose of punishing the improper actions of the sole shareholder, not for the purpose of ensuring payment on the debt (despite the fact that the punishment is generally payment of the debt through personal funds).  In this matter, nearly all of Gribbin's actions with Pyramid occurred prior to Pyramid even being aware that it could be liable for improper work done on the Sierra Sage Apartments.  The court does not find the requisite inequity present when the alleged wrongdoing was completed before any liability was known.  Gribbin did not work to ensure that Plaintiffs could not recover from Pyramid in this matter because he did not know Pyramid had a legal liability.  While it is true that, had Gribbin not liquidated Pyramid's assets, Plaintiffs might have found assets to recover from Pyramid, this factor does not demonstrate inequity to the court such that Gribbin should be held personally liable for a liability to which Pyramid had no indication it was subject.

   Accordingly, Plaintiffs cannot overcome the presumption that Pyramid is separate from its sole shareholder, Gribbin.

   It is therefore ORDERED that Plaintiffs' motion for partial summary judgment (#194) is DENIED;

   It is further ORDERED that Gribbin's motion for summary judgment (#192) is GRANTED.

   DATED this 22nd day of January, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE